# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Kiertowicz*, 2013 IL App (1st) 123271

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MATTHEW KIERTOWICZ, Defendant-Appellant. |
| District & No. | First District, Sixth Division <br> Docket No. 1-12-3271 |
| Filed | August 23, 2013 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's DUI conviction was upheld over his contention that the State did not prove beyond a reasonable doubt that he had physical control of his car, since the arresting officer testified that defendant was alone in the car and was sleeping, the rear windows were down, the engine was running, the taillights were on, and smoke was coming from the exhaust pipe, and despite the absence of any reference to the ignition key, the testimony was sufficient to establish that defendant had actual physical control of his car. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. YT-688486, YT-688487, YT-688488; the Hon. Thomas P. Fecarotta, Jr., Judge, presiding. |
| Judgment | Affirmed. |

Counsel on        Amanda N. Graham and Katie J. Kizer, both of Law Office of Kizer &
Appeal           Graham, and Terrence P. LeFevour, both of Chicago, for appellant.


                 Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and
                 Anne L. Magats, Assistant State's Attorneys, of counsel), for the People.


Panel            JUSTICE GORDON delivered the judgment of the court, with opinion.
                 Justices Hall and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a bench trial, defendant Matthew Kiertowicz was convicted of driving under the influence of alcohol (DUI). In reaching a guilty verdict, the trial court found that defendant, who failed three field sobriety tests, was in actual physical control of his parked vehicle when police officers found him alone and asleep in the driver's seat while the engine was running. After hearing factors in aggravation and mitigation, the trial court sentenced defendant to 18 months' conditional discharge, to undergo significant risk treatment, to attend a victim impact panel, and to pay a $1,250 fine. On this direct appeal, defendant does not challenge the trial court's finding that he was driving under the influence, but instead claims that the State failed to prove beyond a reasonable doubt that he had actual physical control of his vehicle because there was no evidence that he possessed the ignition key or that he was locked alone in the vehicle. For the following reasons, we affirm.

¶ 2                                    BACKGROUND

¶ 3    The evidence at trial established that, on April 1, 2010, Harwood Heights police officer Edward Smith (Smith) observed defendant asleep in the driver's seat of his vehicle, which was idling at a stop sign with the taillights illuminated and smoke emitting from the exhaust pipe. Smith woke defendant and requested he perform three field sobriety tests, which he failed. Defendant was then arrested and charged with driving under the influence of alcohol (625 ILCS 5/11-501(a)(2) (West 2006)), transportation of alcoholic liquor in a motor vehicle (625 ILCS 5/11-502 (West 2006)), failure to have insurance (625 ILCS 5/7-601 (West 2006)), failure to wear a seatbelt (625 ILCS 5/12-603.1 (West 2006)), and parking where prohibited (625 ILCS 5/11-1303 (West 2006)). As a result, defendant's driver's license was suspended for a minimum of 12 months pursuant to section 11-501.1 of the Illinois Vehicle Code. 625 ILCS 5/11-501.1 (West 2006).

¶ 4    Prior to trial, defendant filed a petition to rescind the statutory suspension of his license, and the trial court held a summary suspension hearing. At the hearing, Smith, a 12-year

police veteran who has conducted between 50 to 75 DUI investigations, testified that, on the morning of April 1, 2012, he was on patrol in Harwood Heights in a marked police vehicle and in uniform. At approximately 6:30 a.m., Smith observed a black BMW convertible stopped in the roadway about eight feet behind a stop sign at the intersection of Natchez and Sunnyside Avenues. Smith was 100 yards away when he first observed the vehicle, and it was dawn and the lighting was "very good." As Smith drove toward the vehicle, he observed that "the rear taillights [were] illuminated and smoke [was] coming from the exhaust pipe," but the vehicle did not move for over 30 seconds. Smith, along with his partner,[1] exited the police vehicle and approached the BMW on foot. Smith observed that both rear windows were down and that water had puddled in the back seats, presumably due to a recent rainstorm. Defendant was asleep in the driver's seat, and the gear was shifted in park. Smith identified defendant in court.

¶ 5        Smith testified that, after he knocked on the window, defendant woke up and opened the driver's side door. Smith inquired as to what defendant was doing there and he replied that he was waiting for a friend. Smith observed that defendant's speech was slurred, his eyes were bloodshot and glassy, and his breath smelled of alcohol. Smith inquired of defendant if he had been drinking that evening and defendant responded that he had consumed two beers. Smith observed a glass container next to defendant that appeared to contain beer. Smith asked defendant if the beer was his, and defendant responded that it belonged to a friend. Based on these observations, Smith requested defendant to exit his vehicle and perform three field sobriety tests. Smith determined that defendant failed all three tests and placed him under arrest. Defendant refused a Breathalyzer test.

¶ 6        After Smith's testimony, the trial court denied the State's motion for a directed finding. The State then introduced into evidence a videotape from the police vehicle's dashboard camera, which recorded defendant's field sobriety tests. For the purposes of the hearing, the parties stipulated that the videotape was a true and accurate depiction of the traffic stop. The trial court then admitted the videotape into evidence without objection and it was played before the court. The 11-minute videotape did not record the entire encounter and began sometime after defendant exited his vehicle to perform the field sobriety tests. The videotape starts with a depiction of defendant's vehicle on the side of Natchez Avenue, stopped several feet behind the stop sign at the intersection with Sunnyside Avenue. The vehicle's lights are off and there is no visible exhaust emitting from the tail pipe. The dashboard camera is then shifted slightly to the right, revealing two other vehicles parked behind defendant's vehicle. The remainder of the video depicts defendant performing the three field sobriety tests.

¶ 7        The State rested and the trial court denied defendant's petition, finding that reasonable grounds existed for the initial inquiry that subsequently led to the discovery that defendant was under the influence of alcohol.

¶ 8        Following the hearing, defendant filed a motion *in limine* that sought to bar the State from introducing evidence pertaining to defendant's statements made prior to the time the

---

[1]The appellate record does not reveal the name of the other police officer, nor did he testify at trial.

dashboard camera began recording the incident; however, the appellate record does not reflect the disposition of the motion. Defendant also filed a motion to quash the arrest, claiming: (1) that his arrest was illegal because Smith did not observe him violate any local, state, or federal law; (2) that he was legally parked in his vehicle at the time of his arrest; (3) that Smith lacked probable cause for requiring defendant to perform the field sobriety tests; (4) that he passed all three sobriety tests; and (5) that all the evidence obtained from his arrest should be suppressed. The motion to quash was denied.

¶ 9        At trial, Smith testified that he had received DUI training at the police academy and through a field-training program, and had made between 50 to 75 DUI arrests in his 13 years as a Harwood Heights police officer. On April 1, 2012, Smith was patrolling the area near the intersection of Natchez and Sunnyside Avenues in Harwood Heights. At approximately 6 a.m. that morning, he observed a black BMW stopped eight feet from the stop sign with its taillights illuminated. It took Smith 30 seconds to drive 100 yards toward the BMW, which did not move during that time. Smith drove up behind the BMW and waited another five seconds for it to move, which it did not.

¶ 10       Smith testified that he observed "someone in the driver's seat, the only occupant of the vehicle in the driver's seat not moving." The vehicle was running with its taillights illuminated and smoke emitting from the exhaust pipe. Smith exited his vehicle and, accompanied by another officer, approached the BMW on foot. Defendant was asleep in the driver's seat with his head leaned back and eyes closed. Smith identified defendant in court. Before waking defendant, Smith checked to make sure the gearshift was in park. After Smith knocked on the vehicle's window, defendant awoke and Smith began a conversation with him. Defendant had an odor of liquor on his breath, slurred his speech, and had glassy, bloodshot eyes. Smith observed that defendant had a clear glass halfway filled with a yellow-colored liquid, and when he asked defendant what the beverage was, defendant responded that it was beer.

¶ 11       At that point, the trial court stopped Smith's testimony, and the trial was continued. During the next proceeding, the parties stipulated that the remainder of Smith's testimony would be the same as his testimony from the prior hearing on defendant's motion to rescind. The State then introduced into evidence the same dashboard video that the trial court viewed in the previous hearing. Both parties stipulated that the video was a fair and accurate depiction of the investigation and arrest of defendant. The video was admitted into evidence and the trial court viewed the recording in its entirety.

¶ 12       The State rested, and defendant moved for a directed finding, claiming: (1) that Smith's testimony was not credible because he testified that the traffic stop took place on April 8, 2012, when defendant was in fact arrested on April 1, 2012; and (2) that the State failed to prove defendant had actual physical control of his vehicle because Smith never mentioned the ignition key in his testimony and the dashboard video did not show the vehicle's lights on or smoke emitting from the tail pipe. The State responded that it had met its burden of proof because Smith testified that defendant was alone in the driver's seat of his vehicle, which had its taillights illuminated and exhaust smoke emitting from the tail pipe. Defendant replied that Smith could not have observed that because the video showed that there was another vehicle parked behind defendant's vehicle.

-4-

¶ 13        Following arguments, both parties rested, and the trial court denied defendant's motion to quash, finding that the police had probable cause to arrest him. The parties then waived further arguments, and the trial court found defendant guilty of driving under the influence of liquor and parking where prohibited, but found defendant not guilty of transporting ethyl alcohol, driving without insurance, and not wearing a seatbelt. In finding defendant guilty of driving under the influence, the trial court found that there was no doubt that he was under the influence and that the evidence, notably Smith's testimony, established that defendant had actual physical control of his vehicle.

¶ 14        At the next proceeding, defendant filed a posttrial motion for a "New Trial, Judgment of Acquittal, and/or Arrest of Judgment," arguing that his guilty finding should be vacated because: (1) Smith never observed defendant's vehicle in motion, and the finding was contrary to case law on physical control; (2) Smith never mentioned the ignition key in his testimony; (3) the dashboard video showed that the vehicle's lights were off and that there was no smoke emitting from the tail pipe; and (4) the videotape showed that Smith did not have an unobstructed view[2] of the back of defendant's vehicle and could not have observed the taillights illuminated and smoke emitting from the exhaust pipe. Defendant argued each of these points at the hearing on his motion, and the State responded that Smith's testimony sufficiently established that defendant had actual physical control of his vehicle. After arguments, the trial court denied defendant's motion, finding that Smith's testimony alone was sufficient to convict. The trial court noted that "the police officer does not have to see the defendant drive the vehicle physically; clearly he was driving or additionally he was in actual physical control of the vehicle."

¶ 15        The trial court then held a sentencing hearing, and after considering factors in aggravation and mitigation, sentenced defendant to 18 months' conditional discharge, ordered significant risk treatment, and for defendant to attend a victim impact panel, and levied a $1,250 fine. Defendant appeals his conviction.

¶ 16                                                  ANALYSIS

¶ 17        On appeal, defendant claims that the State failed to prove him guilty beyond a reasonable doubt because the evidence at trial did not establish that he had actual physical control of his vehicle. Defendant argues that the State failed to meet its burden because there was no evidence that he possessed the ignition key or that he was locked alone in his vehicle. In response, the State argues Smith's testimony was sufficient to support a conviction because he testified that the vehicle's taillights were illuminated and smoke was emitting from the exhaust pipe, and that defendant was alone in the vehicle.

¶ 18        When a defendant challenges the sufficiency of the evidence, the standard of review is " 'whether, after viewing the evidence in the light most favorable to the [State], any rational trier of fact could have found the essential elements of the crime beyond a reasonable

_____

        [2]Defendant did not raise this argument on appeal. However, we note that, regardless of whether Officer Smith had an obstructed view at the time he first observed the vehicle, he subsequently approached the vehicle on foot and inspected it at a close distance.

doubt.' " (Emphasis omitted.) *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Under this standard, the reviewing court does not retry the defendant, and the trier of fact remains responsible for making determinations regarding the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence." *People v. Ross*, 229 Ill. 2d 255, 272 (2008). "[A] reviewing court will not reverse a criminal conviction unless the evidence is so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt." *People v. Rowell*, 229 Ill. 2d 82, 98 (2008); *People v. McGee*, 398 Ill. App. 3d 789, 793 (2010).

¶ 19    In a bench trial, the trial judge has the responsibility to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence. *People v. Spann*, 332 Ill. App. 3d 425, 445 (2002) (citing *People v. Slim*, 127 Ill. 2d 302, 307 (1989)). A reviewing court must give the State the benefit of all reasonable inferences. *People v. Wheeler*, 226 Ill. 2d 92, 116-17 (2007) (citing *Cunningham*, 212 Ill. 2d at 280). The evidence of a single witness is sufficient to convict if the witness is found to be credible. *People v. Smith*, 185 Ill. 2d 532, 541 (1999). Testimony may be found insufficient to convict only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt. *Cunningham*, 212 Ill. 2d at 280.

¶ 20    Circumstantial evidence that proves the elements of the crime charged beyond a reasonable doubt is sufficient to sustain a criminal conviction. *People v. Hall*, 194 Ill. 2d 305, 330 (2000). "Circumstantial evidence is 'proof of facts and circumstances from which the trier of fact may infer other connected facts which reasonably and usually follow according to common experience.' " *People v. McPeak*, 399 Ill. App. 3d 799, 801 (2010) (quoting *People v. Stokes*, 95 Ill. App. 3d 62, 68 (1981)). When assessing circumstantial evidence, "the trier of fact is not required to disregard inferences which flow normally from the evidence and to search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *Hall*, 194 Ill. 2d at 332 (citing *People v. McDonald*, 168 Ill. 2d 420, 447 (1995)).

¶ 21    Section 11-501(a)(2) of the Illinois Vehicle Code states: "(a) A person shall not drive or be in actual physical control of any vehicle within [the State of Illinois] while: *** (2) under the influence of alcohol." 625 ILCS 5/11-501(a)(2) (West 2006). "A person need not drive to be in actual physical control of a vehicle, nor is the person's intent to put the car in motion relevant to the determination of actual physical control." *City of Naperville v. Watson*, 175 Ill. 2d 399, 402 (1997). The issue of actual physical control is determined on a case-by-case basis, giving consideration to factors such as whether defendant: (1) possessed the key to the ignition; (2) had the physical capability of operating the vehicle; (3) was positioned in the driver's seat; and (4) was alone in the vehicle with the doors locked. *People v. Slinkard*, 362 Ill. App. 3d 855, 859 (2005). These factors merely provide a guideline to determine whether defendant had actual physical control of the vehicle; the list is neither exhaustive, nor is the absence of one individual factor controlling. *Slinkard*, 362 Ill. App. 3d at 859. Illinois courts have found individuals discovered sleeping in vehicles to be in actual physical control. *Watson*, 175 Ill. 2d at 402.

¶ 22    In the case at bar, Smith's testimony was sufficient to prove beyond a reasonable doubt

that defendant had actual physical control of his vehicle. Smith testified that he observed the vehicle stopped in the road several feet behind a stop sign, and that the taillights were illuminated and smoke was emitting from the tail pipe. Smith noted that it was dawn and the lighting was "very good," and that he observed the stationary vehicle for 30 seconds while he approached it from a distance of 100 yards. Smith then inspected the vehicle on foot and observed defendant sleeping alone in the driver's seat. Smith's testimony establishes that defendant had actual physical control of his vehicle because he was positioned in the driver's seat with the engine running, and thus had the physical capability to drive his vehicle. *Slinkard*, 362 Ill. App. 3d at 859.

¶ 23   Defendant claims that the State did not meet its burden of proof because Smith never mentioned the ignition key in his testimony, nor was the key mentioned in the arrest and inventory reports. Neither the key nor the reports were admitted into evidence at trial. Defendant argues that, since the State did not show the location of the ignition key, it failed to prove that he was physically capable of starting the engine and driving his vehicle. However, while Smith did not explicitly mention the ignition key in his testimony, he did state that he observed the vehicle's taillights illuminated and that exhaust smoke was emanating from the tail pipe. The trial court drew the reasonable inference from Smith's observations that the vehicle's engine was running and thus the key was in the ignition, or the court could have concluded that the key was the new type that only needs to be in the vehicle for the vehicle to start. *Spann*, 332 Ill. App. 3d at 445.

¶ 24   In addition, the dashboard video showed that the vehicle was no longer running after defendant exited the vehicle. This gives rise to the reasonable inference that defendant turned off the vehicle before exiting, and thus provides further proof that defendant was in possession of the ignition key. Since we give the State the benefit of all reasonable inferences, we cannot say that Smith's testimony was insufficient to sustain defendant's conviction. *Wheeler*, 226 Ill. 2d at 116-17.

¶ 25   Defendant argues that, in determining actual physical control, the trial court's focus should be on the location of the ignition key. In support, defendant cites *People v. Long*, 351 Ill. App. 3d 821, 825 (2004), which recognized that the typical case in which courts have upheld the conviction of a sleeping driver has involved a defendant who left the key in the ignition. *Long*, however, is distinguishable from the case at bar because, in that case, the defendant was arrested for a DUI when police found him asleep in his vehicle lying across the front seat, with the ignition key on the floor beneath the steering column. *Long*, 351 Ill. App. 3d at 822. The trial court granted the defendant's motion to quash his arrest, and the appellate court reversed, finding that he had actual physical control of his vehicle. *Long*, 351 Ill. App. 3d at 822. While the appellate court noted the importance of the location of the ignition key in its analysis, it did so because the defendant's vehicle was *not running* when the police discovered him. *Long*, 351 Ill. App. 3d at 822. In the instant case, though there was no explicit testimony concerning the location of the ignition key, Smith testified that the vehicle's taillights were illuminated and smoke was emitting from the tail pipe, which supports a reasonable inference that the key was in the ignition. Moreover, possession of the ignition key is just one of numerous factors that the trial court may consider when determining actual physical control, and the factors are weighed on a case-by-case basis.

*Slinkard*, 362 Ill. App. 3d at 859. Regardless of whether Smith testified to the exact location of the ignition key, he indicated that defendant was in the driver's seat with the engine running, which established that he had actual physical control over his vehicle. *Slinkard*, 362 Ill. App. 3d at 859.

¶ 26    Furthermore, defendant claims that the dashboard video showed that the vehicle was not running and that Smith never testified that anyone turned the ignition off. Defendant cites *People v. Kladis*, 2011 IL 110920, ¶ 29, in support of his argument that video evidence is more compelling than testimonial evidence and that the dashboard video contradicted Smith's testimony that the engine appeared to be running. *Kladis*, however, is distinguishable because, in that case, the defendant requested that the State produce a video recording of her DUI traffic stop, but it subsequently destroyed the video. *Kladis*, 2011 IL 110920, ¶ 1. On appeal, our supreme court found that the State had committed a discovery violation because "the routine video recording of traffic stops has now become an integral part of those encounters." *Kladis*, 2011 IL 110920, ¶ 29. While the *Kladis* court found that video recordings of traffic stops are discoverable (*Kladis*, 2011 IL 110920, ¶ 29), its finding does not relate to the relevant issue in this case concerning the sufficiency of the evidence. As noted, the testimony of a single witness is sufficient to convict if the witness is credible. *Smith*, 185 Ill. 2d at 541. Furthermore, circumstantial evidence that proves the elements of the crime charged beyond a reasonable doubt is also sufficient to sustain a criminal conviction. *Hall*, 194 Ill. 2d at 330. Here, Smith testified that he observed defendant asleep in the vehicle, which had its taillights illuminated and exhaust smoke emanating from the tail pipe. The trial court found Smith to be a credible witness and it drew reasonable inferences from his testimony. *Spann*, 332 Ill. App. 3d at 445. We cannot say that video evidence that the vehicle was later shut off compels the conclusion that no reasonable person could accept the sufficiency of Smith's testimony. *Cunningham*, 212 Ill. 2d at 280.

¶ 27    This case is similar to *People v. Robinson*, 368 Ill. App. 3d 963, 983 (2006). In *Robinson*, a police officer discovered the defendant unconscious in the driver's seat, with the vehicle parked and the engine running. *Robinson*, 368 Ill. App. 3d at 983-84. At trial, the defendant was convicted of a DUI despite no mention of the ignition key in the officer's testimony. *Robinson*, 368 Ill. App. 3d at 965-70. On appeal, we found that the officer's testimony that he observed the defendant slumped over in the driver's seat of the running vehicle was sufficient to prove actual physical control beyond a reasonable doubt. *Robinson*, 368 Ill. App. 3d at 983-84. Here, a police officer similarly testified that he discovered defendant unconscious in the driver's seat of a parked vehicle that had its engine running, but did not mention the location of the ignition key. As such, this case demands a similar result. Regardless of Officer Smith's failure to mention the ignition key in his testimony, the evidence was sufficient to prove that defendant had actual physical control of his vehicle because Smith's testimony that the vehicle was running supported a reasonable inference that defendant was capable of driving his vehicle. *Robinson*, 368 Ill. App. 3d at 983-84.

¶ 28    Defendant also claims that the State failed to establish actual physical control because it did not show evidence that defendant was the sole occupant of a locked vehicle. Defendant argues that, though Smith explicitly testified that defendant was alone in the vehicle, he did not say whether the doors were locked, and his testimony that the back windows were down

supports the inference that the doors were unlocked. Recent case law, however, indicates that courts tend to ignore this factor. See *People v. Scapes*, 247 Ill. App. 3d 848, 850 (1993) (listing factor without applying it to facts); *Slinkard*, 362 Ill. App. 3d at 859-60 (same); *Robinson*, 368 Ill. App. 3d at 983 (never mentioning factor); *People v. Eyen*, 291 Ill. App. 3d 38, 45 (1997) (same). In *People v. Davis*, 205 Ill. App. 3d 431, 433 (1990), we gave this factor significant weight because the police officer testified that he observed the defendant asleep in a sleeping bag on the backseat of his vehicle, which was not running. On appeal, we found that the evidence established that no one but the defendant had actual physical control of the vehicle because he was alone and locked inside and was readily able to turn on the vehicle and drive. *Davis*, 205 Ill. App. 3d at 436. Here, the issue of actual physical control is even stronger because Smith testified that, not only was defendant in the driver's seat, but the engine was running as well. As such, the evidence was sufficient to prove beyond a reasonable doubt that defendant had actual physical control of his vehicle.

¶ 29                                     CONCLUSION

¶ 30          For the foregoing reasons, we affirm defendant's conviction and sentence.

¶ 31          Affirmed.