2023 IL App (2d) 230313-U
No. 2-23-0313
Order filed December 20, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of McHenry County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 23-CF-553 |
| | ) | |
| RUDY A. VILLARREAL JR., | ) | Honorable |
| | ) | James S. Cowlin, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE KENNEDY delivered the judgment of the court.
Justices Hutchinson and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in denying defendant's pretrial release.

¶ 2    Defendant, Rudy A. Villarreal Jr., appeals from the denial of his pretrial release under section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)).[1] The Office of the State Appellate Defender declined to file a memorandum pursuant to

_____

    [1]Section 110-6.1 of the Code was amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act or Safety, Accountability, Fairness and

Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023), and defendant stands on his notice of appeal. For the following reasons, we affirm.

¶ 3    On June 29, 2023, a grand jury returned a 10-count indictment against defendant related to his actions on June 2, 2023, which involved his alleged discharge of a firearm during an argument with his wife, Susana Villarreal. The indicted offenses included armed violence (720 ILCS 5/33A-2(a) (West 2022) (Class X felony)) in that defendant discharged a black pistol into the air three times during an argument with Susana; harassment of a witness (720 ILCS 5/32a(a)(2) (West 2022) (Class 2 felony)), namely, Susana; unlawful possession of weapons by a felon (720 ILCS 5/24-1.1(a) (West 2022) (Class 2 felony)), based on defendant's prior conviction of first-degree murder; three counts of reckless discharge of a firearm (720 ILCS 5/24-1.5(a) (West 2022) (Class 4 felony)); and violation of an order of protection (720 ILCS 5/12-3.4(a)(1)(i) (West 2022) (Class A misdemeanor)), based on defendant's direct contact with Susana.

¶ 4    The State filed a verified petition to deny pretrial release on September 21, 2023, alleging that defendant posed a real and present threat to the safety of others or the community. The trial court heard defendant's motion for release the same day. The parties agreed that defendant was indicted with detainable offenses.

¶ 5    The State identified Officer Jacob Wajda of the Marengo police department, who responded on June 2, 2023, to a report of shots fired at a bar on State Street in Marengo. The State proffered that Wajda spoke with several witnesses on scene, who provided the following statements. Emma Wrona observed defendant enter the bar, argue with Susana, pull out a firearm, and discharge it three times into the air. Maria Wrona also saw defendant fire a gun into the air.

_____

Equity-Today (SAFE-T) Act.

Jakson Bennet saw defendant argue with a woman behind the bar, pull a firearm from his right hip area, and fire it into the air. Zachary Alverado left the bar when defendant and Susana started arguing, and he heard gunshots while walking away from the bar. Joel Acevedo, who was Susana's brother, observed defendant and Susana arguing and later heard gunshots.

¶ 6    Wajda also spoke with Susana, who identified defendant as the man she argued with at the bar. She said that defendant fired a gun into the air after they had taken their argument outside behind the bar. Susana had recently obtained an order of protection against defendant following a domestic violence incident. Since obtaining the order of protection, she stated that defendant and his friends had been sending her harassing and threatening messages over Facebook.

¶ 7    Beyond the witness statements to Wajda, the State asserted that officers searched behind the building and located three bullet casings. The State also argued that defendant's release on bond for a domestic battery (No. 23-CF-530), where he allegedly struck Susana and put his hands on her neck, demonstrated the real danger he posed. It further cited defendant's prior conviction of first-degree murder.

¶ 8    Defense counsel admitted that defendant had an order of protection against him and that the protected party, Susana, was at the bar. Counsel argued that when defendant tried to leave, Susana attacked defendant and his guest, a woman that counsel identified as Ms. Pilar. Counsel proffered that he spoke with Susana on the phone, and she told him that she never saw defendant with a gun. Counsel also spoke with Ms. Pilar, who told him that defendant did not possess a gun that entire day.

¶ 9    In the trial court's written order entered *nunc pro tunc* to September 21, 2023, it found that the State proved by clear and convincing evidence that the proof was evident or the presumption great that defendant committed a detainable offense, that defendant posed a real and present threat

to the safety of persons or the community, and that no condition or combination of conditions could mitigate the threat. The trial court noted that defendant had fired a gun into the air three times while on pretrial release for a domestic battery and had been convicted of first-degree murder. Defendant timely appealed.

¶ 10 Defendant raises four grounds for relief: (1) the State failed to prove that defendant committed the offenses charged, (2) the State failed to prove that defendant posed a real and present threat to the safety of any person or the community where the shots fired were fired into the air, (3) the State failed to prove that no condition or combination of conditions would mitigate defendant's threat to others' safety because it failed to show that GPS and electronic monitoring were not less restrictive alternatives, and (4) the court erred in determining that no condition or combination of conditions would reasonably ensure defendant's appearance at later hearings or prevent defendant from being charged with a subsequent offense. As to the fourth ground, the trial court made no findings regarding conditions ensuring defendant's appearance or preventing subsequent charges, finding only that no set of conditions could mitigate defendant's threat to others' safety, which is sufficient to deny pretrial release. See 725 ILCS 5/110-6.1(e)(3) (West 2022) (the State must prove that no condition can mitigate (i) the defendant's real and present threat to the safety of any person(s) or the community *or* (ii) the defendant's willful flight). We therefore review only the first three grounds for relief.

¶ 11 Pretrial release is governed by article 110 of the Code. *Id.* § 110-1 *et seq.* Under the Code, a defendant's pretrial release may be denied only for certain charged offenses. *Id.* §§ 110-2(a), 110-6.1. Defendant does not dispute that he was charged with detainable offenses under section 110-6.1(a) of the Code. To detain defendant, the trial court had to find that the State proved the following by clear and convincing evidence: (1) the proof was evident or the presumption great

that defendant committed a detainable offense (*id.* § 110-6.1(e)(1)); (2) defendant's pretrial release posed a real and present threat to the safety of any person or persons or the community (*id.* § 110-6.1(e)(2)); and (3) no condition or combination of conditions could mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (*id.* § 110-6.1(e)(3)). At a hearing on the State's petition to deny release, the State may present evidence by way of proffer based on reliable information. *Id.* § 110-6.1(f)(2).

¶ 12   We review whether the trial court's findings were against the manifest weight of the evidence. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13; *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 10; *cf. People v. Tennort*, 2023 IL App (2d) 220313, ¶ 15 (applying the manifest-weight-of-the-evidence standard to the trial court's findings of fact on a motion to suppress evidence). A finding is against the manifest weight of the evidence when it is unreasonable. *People v. Sims*, 2022 IL App (2d) 200391, ¶ 72. We review the trial court's ultimate decision regarding pretrial release for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13.

¶ 13   Here, the trial court's findings were not against the manifest weight of the evidence. The State proffered the statements of five witnesses in addition to Susana's, and all witnesses stated that they either saw defendant fire a gun or heard gunshots. Multiple witnesses saw defendant enter the bar, argue with Susana, and discharge a firearm. Defendant, through counsel, admitted that he and Susana were at the bar and that Susana had an order of protection against defendant. Although defense counsel proffered Susana's subsequent statement denying that defendant had a gun and Ms. Pilar's statement that defendant never possessed a gun, those statements were directly at odds with the statements of uninterested third parties who saw defendant fire a gun or heard gunshots, and it was the trial court's job to resolve conflicts in the evidence (see *People v. Long*, 351 Ill. App. 3d 821, 824 (2004) (the trial court was in the best position to resolve conflicts in testimony

related to its probable cause ruling)). The trial court resolved the conflict in the evidence by reasonably believing the State's proffers, which were further supported by the recovery of three bullet casings behind the bar, matching the number and location of shots reportedly fired by defendant.

¶ 14    Under these facts, the trial court did not err in finding that defendant committed a detainable offense, including unlawful possession of weapons by a felon (725 ILCS 5/110-6.1(a)(6)(C) (West 2022)). We also reject defendant's assertion that he did not pose a danger because the State's proffered evidence was that he fired shots into the air. Discharging a firearm in any direction while in public and near others clearly poses a danger to those persons and the community. See *id.* § 110-6.1(g)(1), (7) (offense involving or defendant possessing a weapon). Moreover, defendant had previously been convicted of first-degree murder, and he acknowledged an altercation at the bar with Susana, his wife, who had obtained an order of protection against him and who was serving as a witness against him in his domestic battery prosecution, for which he had been on pretrial release. *Id.* § 110-6.1(g)(2)(A), (8). Finally, these facts supported the conclusion that neither GPS nor electronic monitoring would mitigate the real threats that defendant would continue to harass Susana, would carry a gun, or would fire a gun again. The trial court reasonably found that defendant's actions at the bar on June 2, 2023, posed a real and present threat to the physical safety of others, and knowing where defendant is located does little to prevent the type of grave harm that defendant threatened in this case. As the trial court's challenged findings were not against the manifest weight of the evidence, we cannot say the trial court's denial of defendant's pretrial release was an abuse of discretion.

¶ 15    For the aforementioned reasons, the trial court did not err in denying defendant's pretrial release. Accordingly, we affirm the judgment of the circuit court of McHenry County.

¶ 16    Affirmed.